Wayne HEPP, et al.,
Respondents-Appellants,

v.

William PIERCE, M.D.,
Petitioner-Appellee.

Alec LAZUR, Respondent-Appellant,

v.

Alfred DAINKO, M.D.,
Petitioner-Appellee.

Linda HARRIS, Respondent-Appellant,

v.

Benjamin F. GRANT, M.D., et al.,
Petitioner-Appellee.

No. 3–1282A350.

Court of Appeals of Indiana,
Third District.

Feb. 27, 1984.

Zarko Sekerez, Merrillville, for respondents-appellants.

David C. Jensen, Richard A. Hanning, Eichhorn, Eichhorn & Link, Hammond, for petitioners-appellees.

GARRARD, Judge.

These three cases have been consolidated because each presents the same question based upon substantially identical facts. The issue concerns the propriety of sanctions imposed upon counsel for all three appellants, Zarko Sekerez. The third case, Linda Harris v. Benjamin F. Grant, M.D., presents an additional issue concerning the propriety of summary judgment entered against the plaintiff.

All three appeals began as medical malpractice actions. In each a proposed complaint was filed with the Commissioner of Insurance pursuant to the Medical Malpractice Act, IC 16–9.5–1–1 et seq. The three complaints were filed between October 22, 1980 and December 19, 1980. The firm of Eichhorn, Eichhorn & Link entered an appearance for each of the three physician defendants and served interrogatories upon each of the three plaintiffs.

Zarko Sekerez, as attorney for each of the three plaintiffs, refused to respond to the interrogatories. Sekerez asserts his refusal was based upon his interpretation of IC 16–9.5–9–4 which provides that evidence submitted to the medical review panel may include "depositions of witnesses including parties and any other form of evidence allowable by the medical review panel." Sekerez construed the statute's reference to depositions as indicating that depositions were the only recognized instruments of discovery. Therefore, he contended interrogatories were not "a matter of right" and as such, need not be answered.

The physicians responded by filing petitions for sanctions pursuant to Indiana Rules of Procedure, Trial Rule 37(B). A little more than three months later Sekerez responded to the physicians' interrogatories after the cases had been venued to the Jasper Circuit Court with The Honorable Marvin D. McLaughlin sitting as Special Judge.

At defendants' request the plaintiffs Harris, Lazur and Hepp were all scheduled to be deposed on October 5, 1981 and counsel for the defendants appeared at the time set for each of the three depositions. The plaintiffs, however, failed to appear for the depositions as did Mr. Sekerez. The physicians responded on November 24, 1981 by filing supplemental petitions for Trial Rule 37(B) sanctions. These petitions incorporated the original petitions for sanctions, asserted Harris, Lazur and Hepp had failed to file adequate answers to the interrogatories originally propounded, and had additionally refused to appear for the October 5 depositions. All three supplemental petitions asserted that counsel for the plaintiffs was personally chargeable for the refusal of discovery, that he had acted in bad faith, and that costs and attorney's fees

should be imposed upon the plaintiffs and their counsel.

The court held a hearing on the original and supplemental petitions for sanctions and on December 10, 1981 entered an order requiring each of the plaintiffs to appear for deposition on December 29; at that time each was to produce the documents previously requested by the defendants and each plaintiff was to file complete responses to the physicians' interrogatories by January 5, 1982. The court then took the issue of sanctions under advisement until it observed the plaintiffs' compliance with the rest of the order.

Hepp and Harris amended their answers to the interrogatories on December 21, 1981. Lazur followed suit on January 11, 1982. All three plaintiffs were deposed on December 29, 1981. All three provided the documents requested of them. At the depositions Harris, Lazur and Hepp were questioned about the halting progress of discovery. All three testified they had relied upon the advice of their attorney, Zarko Sekerez, in responding to the discovery requests. All three evinced some ignorance regarding the physicians' requests for discovery and their respective responses to those requests.

Subsequently on August 23, 1982 counsel for the defendants filed a "Report of Discovery and Motion for Sanctions Against Opposing Counsel" in which it was asserted that Sekerez had attempted to avoid discovery as a matter of his own personal choice without consultation with his clients. The report sought a recovery of attorney fees against Sekerez in favor of The Medical Protective Company, which was the insuror of all three physicians.

On August 31, 1982 the court held a hearing on the request for sanctions. At this time Sekerez argued that no sanctions could be imposed because the court had not complied with the provisions of IC 16–9.5–10–3 which require that the court shall enter its ruling on a motion for discovery within 30 days after it is heard. The court thereafter found the failure to completely answer interrogatories prior to December 29, 1981, the failure to appear for deposition prior to December 29, 1981 and the failure to produce documents prior to December 29, 1981 was in each case done in bad faith and in abuse of the rules of discovery and was done at the direction of Sekerez. The court imposed a sanction in the form of attorney fees in the amount of $300.00 in each case against Sekerez. Sekerez appeals these three awards asserting there was insufficient evidence to support the finding of bad faith, that the award of attorney fees was entered in violation of IC 16–9.5–10–3, and that it was error to award attorney fees to The Medical Protective Company since it was not a party to the action.

Sekerez first asserts there was insufficient evidence of bad faith upon his part to justify the imposition of sanctions. He contends his interpretation of IC 16–9.5–9–4 as only permitting depositions, even if wrong, precludes a finding of bad faith. Of course, that interpretation speaks not to his failure to appear or to have his clients appear for depositions or to the failure to produce documents. That conduct he excuses on his interpretation of IC 16–9.5–10–4 which he asserts excused him from doing anything until the court entered its order on the motion for sanctions.

■ First of all we note that conduct can constitute "bad faith" within the meaning of the rule although it falls short of being "deliberate or by design." *Clark Co. State Bk. v. Bennett* (1975), 166 Ind.App. 471, 336 N.E.2d 663. It depends upon the circumstances of the given case. *Id.* Moreover, since it depends upon the circumstances, the prohibition against an appellate court reweighing the evidence comes to bear. Our review is dependent upon the facts and reasonable inferences before the court which support its determination.

■ Initially, we note that when the discovery was requested Sekerez filed no objections thereto and sought no protective orders wherein a prompt determination of his "interpretations" could have been had. Moreover, the record amply demonstrates

he acted without consultation with his clients in determining to resist the discovery requested.

In addition the record discloses the following. When the interrogatories were originally answered the answers were incomplete and evasive. Despite his assertions, it appears Sekerez nevertheless proceeded himself, to propound interrogatories and seek the production of documents.

We conclude there was sufficient evidence of bad faith.

Sekerez next contends it was error to make the award of attorney fees in favor of The Medical Protective Company since it was not a party to the litigation. We question whether any error has been preserved since no objection was made to the form of request or the order until the filing of the motion to correct errors. We recognize, however, that under the form of the order a technical question may exist whereby Sekerez might be exposed to defending against the claims of the individual defendants based upon the same conduct. Accordingly, pursuant to the authority granted us by Appellate Rule 15(E) we hereby amend the judgment for attorney's fees in each of the three actions to provide that "[the named defendant therein] and his insurer, The Medical Protective Company is hereby awarded judgment in the sum of Three Hundred Dollars ($300.00) against Mr. Zarko Sekerez."

Finally, Sekerez argues that the order for sanctions is in violation of IC 16–9.5–10–3 and cannot stand. That section of the act provides:

"Each nonmoving party to the proceeding, including the commissioner and the chairman of the medical review panel, if any, shall have a period of twenty [20] days after service, or a period of twenty-three [23] days after service if service is by mail, to appear and file and serve his written response to the motion, unless the court, for cause shown, orders the period enlarged. The court shall enter its ruling on the motion within thirty [30] days after it is heard, or if no hearing is requested, granted or ordered, within thirty [30] days after the date on which the last written response to the motion is filed, and shall order the clerk to serve a copy of its ruling on the motion by ordinary mail on the commissioner, each party to the proceeding and the chairman of the medical review panel, if any."

Sekerez asserts that because the court did not enter the orders imposing sanctions within thirty days after the original petitions seeking sanctions were filed, its orders were contrary to law.

In its orders the trial court noted its order was entered within thirty days after the "Report of Discovery and Motion for Sanctions" filed August 23, 1982, and the "report" was in response to the court's prior order of December 10, 1981. While it may be the court's order was thus "timely" within the meaning of the statute, we need not decide the question.

■ The statute contains no expression of the consequences to follow if the court fails to rule within the prescribed period. The time limitation and its purpose are substantially the same as that provided in other civil actions by Trial Rule 53.1(A). By analogy we think the clear implication to be that a judge who fails to rule upon a motion pursuant to IC 16–9.5–10–3 within the time provided is subject to disqualification pursuant to TR 53.1.

■ By the same token we hold, as in other cases governed by TR 53.1, the rule is not self-executing. Affirmative action must be taken to invoke it and the failure to act constitutes a waiver of the defect. *Lewis v. Burke* (1972), 257 Ind. 597, 277 N.E.2d 161; *Jolly v. Modisett* (1971), 257 Ind. 426, 275 N.E.2d 780. Since Sekerez took no action upon the court's purported failure to rule, there was no error.

In addition to the question of sanctions, appellant Harris challenges the summary judgment entered against her upon the basis of the statute of limitations contained in the Medical Malpractice Act. IC 16–9.5–3–1. She contends there were genuine issues of material fact and the court erred in

disregarding a statement contained in her affidavit opposing summary judgment.

Harris commenced her action on October 22, 1980. It alleged that following the delivery of Harris' daughter on October 14, 1978, Dr. Grant had inserted vaginal packing for hemostasis, and that he had subsequently negligently failed to remove all the packing causing her to become infected.

According to Dr. Grant's affidavit before the court, the packing was originally removed on October 15, 1978; according to Mrs. Harris' deposition this occurred October 17, 1978.

Harris remained in the hospital for postpartum care. She developed an elevated temperature and a disagreeable vaginal odor. On October 21, 1978 Harris was examined by Dr. Georgia Mitchell. During the course of the examination Dr. Mitchell removed at least two and possibly four sponges from Harris' vagina. Harris was awake and observed the procedure. In Harris' deposition she says Dr. Mitchell removed four sponges. In her affidavit, Dr. Mitchell says she removed two. According to Harris, right after that her fever went down. On October 24th Harris was discharged from the hospital and returned home with her daughter. According to her complaint, however, Harris continued to suffer ill effects from the sponges having been left in so long.

 The statute of limitations in the Medical Malpractice Act is an "occurrence" statute. *Colbert v. Waitt* (1982), Ind.App., 445 N.E.2d 1000. Thus, it commenced to run when Harris had knowledge of the omission complained of. By the admissions contained in her own deposition Harris acquired that knowledge no later than October 21, 1978 when she saw Dr. Mitchell remove the sponges.

 She attempts to avoid the consequences of that knowledge by two further contentions. She claims she was the patient of Dr. Grant until her discharge from the hospital on October 24th. Since he did not tell her about the sponges she asserts there is a genuine issue of fraudulent concealment under the doctrine of *Guy v. Schuldt* (1956), 236 Ind. 101, 138 N.E.2d 891. We disagree. Where, as here, the patient learns of the malpractice or learns information which would lead to the discovery of the malpractice if the patient exercised diligence to discover, the statute will commence to run. *Adams v. Luros* (1980), Ind.App., 406 N.E.2d 1199; *Toth v. Lenk* (1975), 164 Ind.App. 618, 330 N.E.2d 336.

Finally, she contends that her affidavit filed in opposition to the motion for summary judgment creates a genuine issue of fact. The affidavit stated:

"2. That one day prior to her October 24, 1978 discharge from said hospital, she discovered for the first time that sponges were inadvertently left in her vagina and that failure to timely remove the sponges caused her to develope an infection."

If the affidavit is meant to dispute the statements contained in her deposition that she saw Dr. Mitchell remove the sponges on October 21st, a careful reading demonstrates that it does not do so.[1] Whether or not Harris learned on the 23rd that the sponges had been "inadvertently" left in, or whether on that date someone first told her that this caused the infection, she clearly by her own admission knew the essential facts on the 21st. The mere potential for contradiction between the affidavit and the deposition is insufficient to create a genuine issue of fact. *Gaboury v. Ireland Road Grace Brethren, Inc.* (1983), Ind., 446 N.E.2d 1310, 1313–14.

The summary judgment was proper.

Affirmed.

STATON, P.J., and HOFFMAN, J., concur.

---

1. The trial judge expressly found the affidavit was "a cleverly-worded, attorney-drafted document" which "flies against the unequivocal testimony of Linda Harris in her deposition."