# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 14 2020, 9:25 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANTS

P. Adam Davis
Davis & Sarbinoff, LLC
Carmel, Indiana

ATTORNEYS FOR APPELLEES

Josh Brown
Stephanie Maris
Cohen Garelick & Glazier
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

K.R. Calvert Co., LLC,
*Appellant-Defendant,*

and

Philip Davis,
*Appellant,*

v.

Brian Sandys and
Jennifer Sandys,
*Appellees-Plaintiffs.*

January 14, 2020

Court of Appeals Case No.
19A-PL-443

Appeal from the Hamilton
Superior Court

The Hon. Jonathan M. Brown,
Judge

Trial Court Cause No.
29D02-1501-PL-33

**Bradford, Chief Judge.**

# Case Summary

In 2014, Medex Patient Transport, LLC, sold a franchise to JBS Transport, which was co-owned by Brian and Jennifer Sandys. After a few months, the parties terminated the franchise agreement, and, shortly thereafter, one of the owners of Medex sent an email to Medex's other franchisees that contained allegedly defamatory statements about the Sandyses. The Sandyses sued Medex, Medex's owners, and two affiliated companies (including K.R. Calvert Co., LLC) for breach of contract and defamation.

Eventually, a discovery dispute developed, which resulted in the trial court issuing an order to compel discovery to K.R. Calvert. After several months, the Sandyses notified K.R. Calvert that it still had not complied with the trial court's order to compel, nor had it answered their amended complaint. The email, to which K.R. Calvert's attorney responded, indicated that the Sandyses would seek default judgment against K.R. Calvert if it did not answer its amended complaint within approximately a week.

Approximately one month later, the Sandyses moved for default judgment against K.R. Calvert, which had not answered the amended complaint, and the trial court granted the motion. K.R. Calvert moved to vacate the default judgment, which motion the trial court denied on the basis that K.R. Calvert had not timely answered the Sandyses amended complaint and could not establish excusable neglect.

In May of 2018, the Sandyses moved to voluntarily dismiss all parties except K.R. Calvert because they had negotiated a settlement with them, which

motion the trial court granted. K.R. Calvert moved to strike the voluntary dismissal of the other defendants, which motion the trial court denied. In addition, the trial court ordered K.R. Calvert's counsel Philip Davis to personally pay $630.00 in attorney's fees for filing what it determined to be an improper motion to strike. Davis did not pay, and this award of fees was eventually increased to $1260.00 and reduced to a civil judgment against him in favor of the Sandyses. In January of 2019, the trial court entered its final judgment against K.R. Calvert in favor of the Sandyses, awarding them damages of $10,000.00 for breach of contract, damages of $40,000.00 for defamation *per se*, and $106,676.40 in attorney's fees. K.R. Calvert contends that the trial court abused its discretion in denying its request for relief from the default judgment, erred in awarding damages for breach of contract and defamation *per se*, and improperly awarded attorney's fees. Because we disagree with all of K.R. Calvert's contentions, we affirm.

# Facts and Procedural History

[5] Medex is owned and operated by Klein and Kyle Calvert and offers franchises for the operation of a business that provides non-emergency medical transportation services. K.R. Calvert is an affiliate of Medex that is also owned and operated by Klein and Kyle and acts as the operations arm of the Medex franchise. The Sandyses are co-owners of JBS. Through JBS, the Sandyses entered into a franchise agreement with Medex on or about March 3, 2014.

[6] Things did not go well for long, and the Sandyses' franchise agreement was mutually terminated by way of a settlement agreement dated December 19,

2014 (the "Settlement Agreement"), executed by Medex, JBS, and the Sandyses. The Settlement Agreement contains a non-disparagement clause which states, in part, that

> [t]he Parties agree that they shall not disparage, demean, or make complaints against, either formally or informally, or assist in communicating any information damaging or potentially damaging to the business or reputation of the Parties, to any third party, including but not limited to, the media, the business community, the general public, employees, agents, or customers of the Parties.

Appellant's App. Vol. II p. 73.

[7] Shortly after the Settlement Agreement was executed, Kyle sent the following email to the entire Medex franchise system (the "December 19th Email"):

> As of today Brian Sandys' Indianapolis location will be closing. While this closure has no impact on your day-to-day we wanted to make you aware. In the healthcare franchise industry there is a 9% failure rate. For us, even one is too many, and our goal is to achieve a 0% failure rate. I think with renewed effort on our part and yours we can minimize issues and continue growth.
>
> Here are things we're learning and things you should pay close attention to:
>
> Our most successful stores are the ones where owners are active daily. No second jobs, no part time attention; full time work day in and day out.
>
> Up to date on receivables with their client base. Aging accounts cripples cash flow and will cause issues with your payroll and payables.
>
> Behind or in default of royalties or operations fees. This one is being addressed on a case-by-case basis. But if your location is behind with any payment you're in breach of your contract and

may be terminated with cause.  Make sure you stay current on payables.

Rejecting or refusing work.  We have sent opportunities out to help with growth.  New contracts and contacts to get you business.  Some have refused to grow, add vans, or even connect with the potential work.  If this continues you'll be found in breach of your contract as well for rejecting business that results in over 2% of your trip volume.

And last but not least… sell sell sell.  Those of you who stay behind a desk or steering wheel and don't network or sell are going to lose tremendous business and the possibility of new business.  If you're not growing, you're dying.

I know this a hard email on Friday afternoon before Christmas, but these are the realities of business.  If you don't vigilantly work, fail to take ownership and responsibility, and refuse to grow then the outcome may be bleak.

However, I know each of you are going to take this letter and let it charge you to improve, it did us.  With the New Year let's resolve to better everyone, everything, everywhere.  Let's make 2015 a positive one and let's end with that.

Appellant's App. Vol. II pp. 112–13.

[8] Prior to receiving the December 19th Email, none of the other franchisees had been aware that the Sandyses were closing their Indianapolis franchise.  Two franchisees, Wayne and Anabella Zeitler, later indicated that the statements in the December 19th Email had negatively impacted their opinion of the Sandyses and had made them think that their franchise was a failure, they were not active owners, they were behind on payments and in breach of their franchise agreement, they were behind on payables, their franchise failed as a result of their failure to grow, they did not work hard, and they did not take ownership

and responsibility and refused to grow. Wayne, who also happens to work as a FedEx pilot with Brian, further testified that after receiving the December 19th Email, his personal opinion of Brian as a pilot was negatively affected.

[9] On January 6, 2015, the Sandyses filed suit against Medex; K.R. Calvert; Caliber Patient Care, LLC; Kyle; and Klein, alleging breach of contract and defamation. On February 4, 2015, attorney Phillip Davis appeared on behalf of Medex, Caliber, and Klein. Other attorneys eventually also entered appearances for Medex, Kyle, and Klein, but no attorney entered an appearance on behalf of K.R. Calvert.

[10] On March 29, 2016, the Sandyses wrote to Attorney Davis and counsel for Medex and the Calverts regarding a discovery dispute, which letter took issue with "the responses of your clients, Medex Patient Transport LLC ("Medex"), Caliber Patient Care, LLC ("Caliber"), Kyle Calvert ("Kyle"), Klein Calvert ("Klein"), and K.R. Calvert Co., LLC ("K.R. Calvert") (collectively, "Defendants") to Plaintiffs Brian and Jennifer Sandys's First set of Interrogatories and First Request for Production of Documents[.]" Appellant's App. Vol. III p. 22. On June 27, 2016, the Sandyses moved to compel the defendants, including K.R. Calvert, to respond to interrogatories and produce certain documents. On November 17, 2016, the trial court granted the Sandyses' motion to compel discovery. K.R. Calvert, however, did not respond to the interrogatories or produce the documents requested.

[11] Meanwhile, on August 26, 2016, the Sandyses moved for leave to file an amended complaint. On November 17, 2016, the Sandyses amended their

complaint to add three counts, namely fraud, negligent misrepresentation, and violation of the Indiana Franchise Act, all based on Kyle's alleged failure to disclose a bankruptcy in Medex's franchise disclosure document. On April 7, 2017, Attorney Davis answered the Sandyses' amended complaint on behalf of Caliber, but no answer was filed on behalf of K.R. Calvert.

[12] On May 9, 2017, the Sandyses' counsel provided written notice to K.R. Calvert in an email that it had neither provided responsive documents pursuant to the order to compel discovery nor answered the amended complaint. The body of the email reads, in full, as follows:

> K.R. Calvert has failed to provide document responses to the Sandys Parties Requests For Production, which were served on November 23, 2015. Moreover, the Court granted the Sandys Parties Motion to Compel the production of documents on November 17, 2016. We still have NO documents from K.R. Calvert. That is what we see as wrong. K.R. Calvert's disregard of the Court's Order compelling the production of documents is troubling, and I don't believe the Court is going to take to kindly to you or your client if I have to bring it to their attention. Please provide these long overdue documents by Friday, May 19th. If I am not in receipt of these documents by the end of business (5:30 pm) on Friday, May 19th I will be filing a motion to hold K.R. Calvert and you as their Counsel in contempt of the Court's Order and seek fees and sanctions.

> Additionally, I do not believe that K.R. Calvert has Answered the Sandys Parties Amended Complaint. If you do not file an Answer by the end of the week we will be moving for default judgment.

Appellant's App. Vol. IV p. 120. Attorney Davis responded to this email the same day, asking the Sandyses' counsel what was missing, to which the

Sandyses' counsel responded that they had received nothing from K.R. Calvert yet.

[13] On June 7, 2017, or twenty-nine days later, the Sandyses moved for default judgment against K.R. Calvert, which had still neither complied with the order to compel discovery nor answered the Sandyses' amended complaint. On June 19, 2017, the trial court entered default judgment in favor of the Sandyses against K.R. Calvert. On June 20, 2017, K.R. Calvert moved to vacate the order entering default judgment in favor of the Sandyses.

[14] On August 7, 2017, the trial court denied K.R. Calvert's motion to vacate on the ground that it had

> failed to file an answer to the Plaintiffs' Amended Complaint for over 7 months, and only filed an answer after the Court issued the default judgment entry. Further, Defendant failed to set forth the basis for setting aside the default judgment pursuant to Ind. T.R. 60(B), which requires excusable neglect and a meritorious defense.

Appellant's App. Vol. II p. 48. The trial court further ordered K.R. Calvert to provide any outstanding responsive documents and/or discovery to the Sandyses, as well as a response by August 14, 2017, and took the issue of contempt and sanctions related to discovery under advisement pending oral arguments on the issue during the damages hearing.

[15] On August 15, 2017, K.R. Calvert filed a notice of compliance with the August 7, 2017, order after sending a letter to the Sandyses on August 14, 2017, which stated that there were no responsive documents to be produced relating to the Sandyses' discovery requests. Accompanying the letter were several

documents, none of which were responsive to the requests for production. On September 8, 2017, the Sandyses responded to the notice of compliance, maintaining that K.R. Calvert still had not produced any email or other communications regarding the Sandyses and/or JBS in violation of the trial court's order of August 7, 2017.

[16]     On September 11, 2017, the trial court conducted the first of what would eventually be five damages hearings. On October 20, 2017, as requested by the trial court, the Sandyses filed their initial petition for damages and attorney's fees. K.R. Calvert filed its response on November 9, 2017, after filing four motions for extension of time within ten days. On November 13, 2017, the trial court issued an order regarding the requests for extensions of time in which it "strongly admonishe[d] counsel to be more appreciative of not only opposing counsel's time, but also the time of the Court." Appellant's App. Vol. VI p. 88.

[17]     Meanwhile, the Sandyses moved to voluntarily dismiss, with prejudice, Medex, Caliber, Kyle, and Klein because they had reached a settlement agreement with them. On May 8, 2018, the trial court granted the Sandyses' motion. On May 11, 2018, K.R. Calvert moved to strike the Sandyses' voluntary dismissals of the other defendants, which motion the trial court denied on May 22, 2018. In its order, the trial court noted that K.R. Calvert did not have any claims pending against any of the dismissed parties, Attorney Davis did not represent any of them, and none of the dismissed parties had indicated any objection to being dismissed. The trial court, however, denied the Sandyses' request for attorney's fees at that time. On July 18, 2018, the trial court issued another

order in which it reaffirmed its denial of K.R. Calvert's motion to strike but reversed its earlier decision on fees, ordering Attorney Davis to pay the Sandyses' trial counsel Joshua Brown $630.00 in attorney's fees.

[18] On October 16, 2018, the Sandyses moved for a rule to show cause why Attorney Davis should not be held in contempt, as he had yet to pay Attorney Brown the $630.00 he had been ordered to. On October 17, 2018, the trial court granted the Sandyses' motion; set the matter for a hearing on January 7, 2019; and gave Attorney Davis until October 31, 2018, to purge himself of contempt by paying the $630.00. Attorney Davis did not pay before October 31, 2018.

[19] On January 7, 2019, the Sandyses requested an additional $630.00 in attorney's fees from Attorney Davis, and the trial court entered a civil judgment of $1260.00 against Attorney Davis in favor of the Sandyses. On January 24, 2019, the trial court entered its final judgment against K.R. Calvert in favor of the Sandyses, awarding them damages of $10,000.00 for breach of contract, damages of $40,000.00 for defamation *per se*, and $106,676.40 in attorney's fees.

# Discussion and Decision

## I. Whether the Trial Court Abused its Discretion in Denying K.R. Calvert's Motion for Relief from Default Judgment

[20] The trial court entered default judgment in favor of the Sandyses and against K.R. Calvert because it did not answer the Sandyses' amended complaint. Indiana Rule of Trial Procedure 8(B) provides, in part, that "[a] responsive

pleading shall state in short and plain terms the pleader's defenses to each claim asserted and shall admit or controvert the averments set forth in the preceding pleading." "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise comply with these rules and that fact is made to appear by affidavit or otherwise, the party may be defaulted by the court." Trial R. 55(A).

If a party is defaulted, "[a] judgment by default which has been entered may be set aside by the court for the grounds and in accordance with the provisions of Rule 60(B)." Trial R. 55(C). Trial Rule 60(B) provides, in part, that "[o]n motion and upon such terms as are just the court may relieve a party or his legal representative from a judgment, including a judgment by default, for the following reasons: (1) mistake, surprise, or excusable neglect[.]"

> The burden is on the movant to demonstrate that relief under T.R. 60(B) is both necessary and just. *Fairrow v. Fairrow,* 559 N.E.2d 597, 599 (Ind. 1990). Relief under T.R. 60(B)[(1)] also requires that the movant make a *prima facie* showing of a meritorious defense[.] *Smith v. Johnson,* 711 N.E.2d 1259, 1265 (Ind. 1999). A meritorious defense refers to "evidence that, if credited, demonstrates that a different result would be reached if the case were retried on the merits and that it is unjust to allow the default to stand." *Id.*

*In re Rueth Dev. Co.*, 976 N.E.2d 42, 51 (Ind. Ct. App. 2012), *trans. denied*.

> We review the grant or denial of […] Trial Rule 60(B) motions for relief from judgment under an abuse of discretion standard. *Speedway SuperAmerica, LLC v. Holmes,* 885 N.E.2d 1265, 1270 (Ind. 2008); *Outback Steakhouse of Florida v. Markley*, 856 N.E.2d 65, 72 (Ind. 2006). On appeal, we will not find an abuse of discretion

> unless the trial court's decision is clearly against the logic and
> effect of the facts and circumstances before it or is contrary to law.
> *Miller v. Moore*, 696 N.E.2d 888, 889 (Ind. Ct. App. 1998).

*Cleveland v. Clarian Health Partners, Inc.*, 976 N.E.2d 748, 755 (Ind. Ct. App. 2012), *trans. denied*. K.R. Calvert contends that the trial court abused its discretion in refusing to find that it had established excusable neglect and/or a meritorious defense. We first address K.R. Culvert's contention that the trial court abused its discretion in determining this its neglect was inexcusable.

[23]

> When deciding whether or not a default judgment may be set aside
> because of excusable neglect, the trial court must consider the
> unique factual background of each case because "no fixed rules or
> standards have been established as the circumstances of no two
> cases are alike." *Siebert Oxidermo, Inc. v. Shields*, 446 N.E.2d 332,
> 340 (Ind. 1983); *quoting Grecco v. Campbell*, 179 Ind. App. 530, 386
> N.E.2d 960, 961 (1979); *see also Boles v. Weidner*, 449 N.E.2d 288,
> 290 (Ind. 1983).

*Coslett v. Weddle Bros. Const. Co.*, 798 N.E.2d 859, 860–61 (Ind. 2003) (citations and quotation marks omitted). We agree with the proposition that "'[e]xcusable neglect […] is just that: *excusable* neglect, not just neglect. It is something that can be explained by an unusual, rare, or unforeseen circumstance, for instance.'" *Huntington Nat. Bank v. Car-X Assoc. Corp.*, 39 N.E.3d 652, 656 (Ind. 2015) (quoting, with approval, *Huntington Nat. Bank v. Car-X Assocs. Corp.*, 22 N.E.3d 687, 694 (Ind. Ct. App. 2014) (Barnes, J., dissenting), *vacated*, 29 N.E.3d 123 (2015)).

[24] We conclude that, under the circumstances of this case, the trial court did not abuse its discretion in declining to find excusable neglect. Attorney Davis

focuses on his admitted error in appearing for and responding to the Sandyses amended complaint on behalf of Caliber (instead of K.R. Calvert), and, while acknowledging the error, characterizes it as a "clerical error" which he claims to have discovered only upon the entry of default judgment. Appellant's Br. p. 20. We think that Attorney Davis and K.R. Calvert are largely missing the point here. The problem is not that K.R. Calvert *initially* failed to appear or answer the amended complaint due to an error—the problem is that K.R. Calvert failed to answer the amended complaint even after it was informed that it had not already answered and that a failure to promptly do so would cause the Sandyses to move for default judgment.

[25] K.R. Calvert contends the portion of the May 9, 2017, email informing it that it had not answered the Sandyses' amended complaint and that the Sandyses would be seeking default judgment if it did not file an answer was "overlooked in all the back and forth between the parties." Appellant's Br. p. 20 n.14. Even if we assume that this is true, we cannot say that this amounts to excusable neglect as a matter of law. The email in question was from opposing counsel in a pending lawsuit, something to which prompt and thorough attention should have been paid. Moreover, the section of the email addressing K.R. Calvert's failure to answer the amended complaint directly followed the section about K.R. Calvert's failure to provide requested documents pursuant to an order to compel, so it was abundantly clear that the email was about business. Finally, the section in question was in the main body of a somewhat short email, not buried in a postscript or footnote where it might not be noticed. In short, there

was nothing rare, unusual, or unforeseen that would excuse such an oversight. Even if we assume that K.R. Calvert failed to notice and/or appreciate the importance of the May 9, 2017, email, that failure, while it certainly strikes us as negligent, was not excusable as a matter of law. We conclude that the trial court did not abuse its discretion in refusing to vacate the default judgment entered against K.R. Calvert.

## II. Whether the Trial Court Abused its Discretion in Determining Damages

[26] K.R. Calvert contents that the trial court abused its discretion in awarding the Sandyses $10,000.00 for breach of contract and $40,000.00 for defamation *per se*. Generally,

> [t]he standard of review for a damage award is that no reversal will occur if the award is within the scope of evidence before the trial court; if the award of damages is supported by the record, the determination of damages is within the sound discretion of the trial court.

*Brant Const. Co. v. Lumen Const. Co.*, 515 N.E.2d 868, 872 (Ind. Ct. App. 1987), *trans. denied*.

> An abuse of discretion occurs when the trial court's action is against the logic and effect of the facts and circumstances before it. In determining whether the trial court abused its discretion, we must only consider the evidence and reasonable inferences favorable to the non-moving party. We may not weigh conflicting evidence or judge the credibility of witnesses.

*Menard, Inc. v. Comstock*, 922 N.E.2d 647, 650 (Ind. Ct. App. 2010) (citations omitted), *trans. denied*. K.R. Calvert contends that there is no evidence that

would support a conclusion that it caused the Sandyses any damages, a settlement reached between the Sandyses and other defendants entitles it to a set-off against its damages, an award of damages is inappropriate because the Sandyses failed to mitigate their damages, and the amounts of damages are unsupported by the record.

## A. Causation

K.R. Calvert first argues that there is no evidence that it was a party to the Settlement Agreement or that it had anything to do with the defamatory communication. Those particular ships, however, have sailed. "A default judgment has been defined as a confession of the complaint and it is rendered without a trial of any issue of law or fact." *Davis v. Davis*, 413 N.E.2d 993, 996–97 (Ind. Ct. App. 1980). Following the entry of default judgment, the defendant may no longer avail himself of substantive defenses. *See Siebert Oxidermo, Inc. v. Shields*, 446 N.E.2d 332, 338 (Ind.1983) ("Substantive defenses as to causation are no longer an issue between parties after there has been an entry of default against the defendant. Thus, the question of a lack of causation between plaintiff Shields' injuries and defendant Oxidermo's conduct would not have been a proper subject for consideration even in Oxidermo's first Rule 60(B) motion.") (citation omitted). The Sandyses' amended complaint alleged that K.R. Culvert breached the Settlement Agreement and defamed them, causing damages. The entry of default judgment against K.R. Culvert means that those allegations were deemed confessed, and the only thing left to determine was the amount of damages.

## B. Set-Off

K.R. Calvert claims that, in light of the Sandyses' apparent $80,000.00 settlement with the other defendants, the award of $10,000.00 for breach-of-contract and $40,000.00 for defamation *per se* represents an impermissible double recovery.

> A trial court has the power and duty to reduce jury verdicts by amounts received in settlement to ensure that a plaintiff not receive more than a full recovery. *Huffman v. Monroe County Cmty. Sch. Corp.*, 588 N.E.2d 1264, 1267 (Ind. 1992). Because the settlement credit is in the nature of an affirmative defense on the issue of damages, the defendant who seeks to take advantage of this credit bears the burden of proving the amount of the credit to which he is entitled. *Riehle v. Moore*, 601 N.E.2d 365, 371 (Ind. Ct. App. 1992), *trans. denied*. […]
>
> When the actions of multiple defendants cause a single injury to a plaintiff, a defendant against whom judgment is rendered at trial is entitled to a setoff against the assessed damages in the amount of any funds the plaintiff received from any settling joint tortfeasor. [*Marquez v. Mayer*, 727 N.E. 2d 768, 774 (Ind. Ct. App. 2000), trans. denied).] Joint tortfeasors are those whose actions unite to cause a single injury. *Id.* This credit is allowed in order to prevent a plaintiff from recovering twice for the same injury. *Id.* As our Supreme Court outlined in [*Mendenhall v. Skinner & Broadbent Co.*, 728 N.E.2d 140, 141 (Ind. 2000)], Indiana courts have traditionally followed the "one satisfaction" principle, meaning that courts should take account of settlement agreements and credit the funds received by the plaintiff through such agreements, pro tanto, toward the judgment against the co-defendants.

*Palmer v. Comprehensive Neurologic Servs., P.C.*, 864 N.E.2d 1093, 1100–01 (Ind. Ct. App. 2007), *trans. denied*.

The trial court found that K.R. Calvert failed to meet its burden of proving what portion of the settlement amount was allocated to the breach-of-contract and defamation *per se* claims or present any other evidence to support a right to a set-off. K.R. Calvert points to nothing in the record that undermines this finding, merely baldly stating that the full $80,000.00 settlement amount should be set off against any damages it was ordered to pay. In the absence of an accounting, K.R. Calvert has failed to establish that the trial court abused its discretion in declining to order a set-off against its damages in the amount paid by the settling defendants.

## C. Mitigation

K.R. Calvert also alleges that the Sandyses are not entitled to an award of damages because they failed to mitigate their damages.

> "The principle of mitigation of damages addresses conduct by an injured party that aggravates or increase the party's injuries." *Willis v. Westerfield*, 839 N.E.2d 1179, 1187 (Ind. 2006) (quoting *Deible v. Poole*, 691 N.E.2d 1313, 1315 (Ind. Ct. App. 1998), *aff'd* 702 N.E.2d 1076 (Ind. 1998)). The failure to mitigate damages "is an affirmative defense that may reduce the amount of damages a plaintiff is entitled to recover after liability has been found." *Id.* That is, "the amount of damages a plaintiff is entitled to recover is reduced by those damages which reasonable care would have prevented." *Id.* This affirmative defense has two elements, both of which the defendant bears the burden of proving. *Id.* at 1188. "First, the defendant must prove that the plaintiff failed to exercise reasonable care to mitigate his or her post-injury damage. Second, the defendant must prove that the plaintiff's failure to exercise reasonable care caused the plaintiff to suffer an identifiable item of harm not attributable to the defendant's negligent conduct." *Id.*

*Simmons v. Erie Ins. Exch.*, 891 N.E.2d 1059, 1064 (Ind. Ct. App. 2008).

[31] K.R. Calvert claims that the Sandyses failed to mitigate their damages when they did not approve or otherwise revise a draft retraction letter written by K.R. Calvert which, as it happens, was never sent to any of the individuals who received the December 19th Email. We fail, however, to see how it was the Sandyses' responsibility to approve or revise the draft retraction letter for K.R. Calvert. As the trial court noted during the March 6, 2018, damages hearing, the Sandyses "didn't have any control over K R Calvert." Tr. Vol. III p. 193. K.R. Calvert certainly could have sent a retraction to the recipients of the December 19th Email in an attempt to reduce the damage to the Sandyses, but it did not. We agree with the Sandyses that they should not pay for K.R. Calvert's failure to send the retraction letter.

## D. Breach of Contract

[32] K.R. Calvert argues that the record does not support the award of $10,000.00 in damages for breach of contract. K.R. Calvert first argues that it cannot be held liable for breaching the Settlement Agreement because it was not a party to it. As mentioned, this is a substantive defense no longer available to K.R. Calvert. *See Siebert Oxidermo*, 446 N.E.2d at 338. K.R. Calvert also points to statements made by the Sandyses' counsel at a hearing on September 11, 2017, at which he stated that the only damages the Sandyses could show at that point were nominal damages related to defamation *per se* and that "we don't have any actual damages to show." Tr. Vol. II p. 208. This statement, however, was made approximately five months before the depositions of the Zeitlers, who

testified at length regarding the reputational damage suffered by the Sandys. A concession made many months before the most relevant evidence regarding damages was developed does not undermine the ultimate award of damages.

## E. Defamation

[33] K.R. Calvert also contends that the trial court abused its discretion in awarding $40,000.00 in damages for defamation *per se*. If a communication is defamatory *per se*, "the law implies, infers, or presumes general damages as the natural and probable consequences of such defamation[.]"[1] *Elliott v. Roach*, 409 N.E.2d 661, 683 (Ind. Ct. App. 1980) citation and quotation marks omitted).

> Indiana law reflects the historic rule that publication in written form of statements per se—words which, on their face and without regard to extrinsic facts, tend to injure the reputation of another— subjects a publisher to liability although no harm to reputation is actually proved. Under the 'presumed damages' rule, juries may award substantial sums as compensation for supposed injury to reputation without any proof that such harm was actually suffered.

*Id.* (citations omitted).

---

[1] The Sandyses alleged that the December 19th Email was defamatory *per se*:

> A statement is defamatory if it tends "to harm a person's reputation by lowering the person in the community's estimation or deterring third persons from dealing or associating with the person." *Kelley v. Tanoos*, 865 N.E.2d 593, 596 (Ind. 2007) (internal citation omitted). One type of defamation action, alleging defamation *per se*, arises when the language of a statement, without reference to extrinsic evidence, constitutes an imputation of (1) criminal conduct, (2) a loathsome disease, (3) *misconduct in a person's trade, profession, office, or occupation*, or (4) sexual misconduct.

*Dugan v. Mittal Steel USA Inc.*, 929 N.E.2d 184, 186 (Ind. 2010) (second emphasis added).

K.R. Calvert argues that the Sandyses produced insufficient evidence to sustain the award of $40,000.00 in damages because they failed to prove any actual damages. As just mentioned, however, such proof is not necessary in a defamation *per se* case. Moreover, K.R. Calvert does not argue that the award exceeds the permissible "substantial" sum that may be awarded in defamation *per se* cases. *Id*. In conclusion, K.R. Calvert has failed to establish that the trial court abused its discretion in awarding damages for breach of contract and defamation *per se*.

## III. Whether the Trial Court Properly Awarded Attorney's Fees to the Sandyses

The trial court awarded $106,676.40 in attorney's fees to the Sandyses pursuant to Indiana Trial Rule 37(B) for discovery violations and Indiana Code section 34-52-1-1(b)(3) for litigating in bad faith. The trial court identified several reasons for finding that K.R. Calvert had failed to cooperate with discovery and/or litigated in bad faith:

> 3.    Throughout this case, there are several examples of K.R. Calvert engaging in bad faith litigation tactics. First, on June 19, 2017, K.R. Calvert, by counsel, filed various motions after a default judgment had been entered. A hearing on these motions was held on August 7, 2017 and the Court denied K.R. Calvert's Motion for Leave to File an Amended Answer declaring the motion moot since judgment had already been entered.
>
> 4.    Second, K.R. Calvert filed four motions for extension of time to respond to Plaintiffs' Initial Petition for Damages and Attorneys' Fees on October 31, 2017, November 6, 2017, November 7, 2017, and November 8, 2017 respectively. On November 8, 2017, Plaintiffs filed a response in opposition to the

serial requests for extension of time as the next damages hearing was quickly approaching. However, since K.R. Calvert did not file its third motion for extension of time until 11:53 p.m., the extension was effectively granted as the Court could not practically rule on the motion before the November 7th deadline had passed. In this Court's order of November 13, 2017, this Court "reluctantly grant[ed] the requests for extension of time" and "strongly admonish[ed] counsel to be more appreciative of not only opposing counsel's time, but also the time of the Court."

5.      Third, on May 11, 2018, K.R. Calvert, by counsel, filed a Motion to Strike Plaintiffs' voluntary dismissal of the other defendants in the lawsuit and requested that the order granting the dismissal be set aside. On May 22, 2018, the Court, after holding a hearing on the matter and indicating the motion to be improper, denied K.R. Calvert's motion to strike. The Court subsequently ordered Mr. Davis to pay $630.00 in attorneys' fees to Mr. Brown for preparing for and attending the hearing on K.R. Calvert's motion to strike.

6.      Fourth, K.R. Calvert did not produce responsive documents in compliance with the November 15, 2016 order which granted Plaintiffs' motion to compel discovery against K.R. Calvert. On August 7, 2017, the Court directed K.R. Calvert to produce responsive documents on or before August 14, 2017, but K.R. Calvert continued to disregard the Court's order by failing to produce responsive documents. K.R. Calvert represented to the Court they had complied with the August 7th Order, but Plaintiffs[] pointed out in their response thereto, that K.R. Calvert still had not produced any emails and other communications regarding Brian and Jennifer Sandys and/or JBS Transport. Rather than produce responsive documents, K.R. Calvert produced documents that were not specifically requested by Plaintiffs.

7.      Fifth, Kyle and Klein, as principals of K.R. Calvert reviewed documents and made their own determination as to what was relevant and pertinent in relation to the discovery requests.

This was improper as neither Kyle nor Klein are attorneys who are familiar with the discovery rules for the State of Indiana.

[....]

9.     K.R. Calvert's lack of good faith in the production of documents and abuse of the discovery process has prejudiced Plaintiffs by making them guess what additional, relevant, and pertinent documents exist in response to their discovery requests.

10.     All of this activity indicates that K.R. Calvert litigated this matter in bad faith and engaged in dilatory tactics, filed baseless motions, unnecessarily multiplied litigation, and failed to comply with discovery requests and subsequent discovery orders.  Therefore, the Court finds that Plaintiffs are entitled to attorneys' fees and costs as a sanction under Ind. Trial Rule 37 and I.C. § 34-52-1-1(b)(3).

Appellant's App. Vol. II pp. 82–84.

## A.  Trial Rule 37(B)

Trial Rule 37(B) authorizes the trial court to impose expenses and attorney's fees for failing to cooperate with discovery without substantial justification. "[C]onduct can constitute 'bad faith' within the meaning of [Trial Rule 37] although it falls short of being 'deliberate or by design.'" *Hepp v. Pierce*, 460 N.E.2d 186, 188 (Ind. Ct. App. 1984) (quoting *Clark Cty. State Bk. v. Bennett*, 166 Ind. App. 471, 480, 336 N.E.2d 663, 669 (1975)).  "It depends upon the circumstances of the given case." *Id.*  "Moreover, since it depends upon the circumstances, the prohibition against an appellate court reweighing the evidence comes to bear." *Id.*

Of relevance to K.R. Calvert's abuse of the discovery process, the trial court found that it had failed to produce responsive documents, pursuant to a court

order, for over six months.  Then, when the trial court issued another order compelling K.R. Calvert to comply with discovery, it responded by producing non-responsive documents that were not requested.  We conclude that the trial court was in the best position to evaluate K.R. Calvert's conduct and cannot say that the trial court erred in finding K.R. Calvert's recalcitrance to be sanctionable.  *See Clark Cty. State Bk.*, 166 Ind. App. at 480, 336 N.E.2d at 669 (concluding that the trial court reasonably found that defendant's delay in responding to plaintiffs' interrogatories and failing to comply with the agreed-upon extension amounted to bad faith and abusive conduct, justifying the award of attorney's fees).  To the extent that the trial court's award of attorney's fees was based on a bad-faith failure to cooperate with discovery, K.R. Calvert has failed to establish that it was unreasonable.

## B.  Indiana Code section 34-52-1-1(b)(3)

[38]     "In any civil action, the court may award attorney's fees as part of the cost to the prevailing party, if the court finds that either party […] litigated the action in bad faith[.]"  Ind. Code § 34-52-1-1(b)(3).  Bad faith pursuant to Indiana Code section 34-52-1-1(b)(3) "is not simply bad judgment or negligence.  Rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity.  It is different from the negative idea of negligence in that it contemplates a state of mind affirmatively operating with furtive design or ill will."  *Oxendine v. Pub. Serv. Co. of Ind.*, 423 N.E.2d 612, 620 (Ind. Ct. App. 1980).

An award under Indiana Code Section 34-52-1-1 is afforded a multistep review. [*SJS Refractory Co., LLC v. Empire Refractory Sales, Inc.*, 952 N.E.2d 758, 770 (Ind. Ct. App. 2011).] First, we review the trial court's findings of fact under a clearly erroneous standard, and then we review the trial court's legal conclusions *de novo*. *Id*. Finally, we review the trial court's decision to award attorney's fees and the amount thereof under an abuse of discretion standard. *Id*. at 770–71.

*Techna-Fit, Inc. v. Fluid Transfer Prod., Inc.*, 45 N.E.3d 399, 418 (Ind. Ct. App. 2015).

[40] K.R. Calvert does not really challenge the trial court's findings, arguing essentially that we should interpret the circumstances of this case differently than the trial court did. K.R. Calvert also argues that other occurrences, such as the fact that K.R. Calvert was never actually held in contempt of court, undercut the trial court's determination of bad faith. We interpret this as a challenge to the trial court's legal conclusion that K.R. Calvert litigated in bad faith, which we review *de novo*.

[41] To summarize the trial court's findings, K.R. Calvert (1) filed several motions that were moot due to the default judgment that had already be entered against it, (2) filed four requests for an extension of time within ten days at one point, (3) filed an improper motion to strike the Sandyses' settlement with the other defendants, (4) failed to comply with an order to compel discovery by delaying any response for several months and failing to deliver the requested documents when it did respond. Taken as a whole, we conclude that the above supports a finding of bad faith. For one thing, we can think of no legitimate reason to file four extension requests within ten days, with the last three being filed before the

first was ruled upon. This flurry of filings led to a rather stern warning about wasting the parties' and the trial court's time. Despite this warning, K.R. Calvert later moved to strike the Sandyses' voluntary dismissal of the other defendants, a motion the trial court found to be improper. Finally, K.R. Calvert delayed its response to an order to compel for several months and then failed to comply with the order when it did respond. All of this required the unnecessary commitment of time and resources by the other parties and the trial court, supporting an inference, at the very least, of furtive design, if not actual ill will. We conclude that K.R. Calvert's actions amount to bad faith for purposes of Indiana Code section 34-52-1-1(b)(3), supporting an award of attorney's fees. Because K.R. Calvert does not challenge the amount of the attorney's fees awarded, we need not review it for an abuse of discretion. K.R. Calvert has failed to establish that the trial court's award of attorney's fees to K.R. Calvert was improper.

## III. Whether the Trial Court Properly Ordered Attorney Davis to Pay Attorney's Fees

[42] As mentioned, the trial court also ordered Attorney Davis to personally pay $630.00 to Attorney Brown for having to defend what the trial court found to be an improper motion to strike the Sandyses' voluntary dismissals of the other defendants. When Attorney Davis did not pay, Attorney Brown moved for a rule to show cause why Attorney Davis should not be held in contempt, which motion the trial court granted while giving him two weeks in which to purge the contempt, which he did not do. Finally, when Attorney Brown requested an

additional $630.00 in attorney's fees from Attorney Davis, the trial court granted the request and entered a civil judgment of $1260.00 against Attorney Davis in favor of the Sandyses. (Appellant's App. Vol. II p. 62).

[43] Attorney Davis claims only that the trial court's fee order and civil judgment should be vacated because the trial court allegedly found that his motion to strike the Sandyses' voluntary dismissals of the other defendants was not made in bad faith. While it is true that the trial court's May 22, 2018, order declined to award any fees to the Sandyses at that time, its July 19, 2018, order *did* award the requested fees. So, even if we assume that the trial court initially found no bad faith on Attorney Davis's part, it clearly changed its mind. Attorney Davis does not argue that the trial court was not allowed to revisit its initial determination; he simply fails to acknowledge that it did. Attorney Davis also does not challenge anything that occurred after the initial fee order, up to and including the trial court's imposition of additional fees and reduction of the amount to a civil judgment. Attorney Davis has failed to establish that the trial court's order that he personally pay $1260.00 to the Sandyses was improper in any way.

[44] The judgment of the trial court is affirmed.

Robb, J., and Altice, J., concur.